IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA

v.                              Criminal No. 3:16CR139

RICHARD TODD HAAS,

      Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (ECF No. 14) ("Def's Mtn. to Suppress"). Also included in the Defendant's Motion to Suppress is a request for a *Franks* hearing. (ECF No. 14, #7, FN. 2). For the reasons set forth below, the DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (ECF No. 14) and the request for a *Franks* hearing will be denied.

## BACKGROUND

On September 1, 2016, Magistrate Judge Young granted the Government's APPLICATION FOR A SEARCH WARRANT. (ECF No. 14-1, #53). The SEARCH AND SEIZURE WARRANT for the 1995 Ford tractor trailer truck, license plate 26-392, VIN: 1FTYY90V6SVA73472, and a Samsung Galaxy S5, model SM-G900V,90004913336164, related to a violation of 18 U.S.C. § 2252A(2)(a), Possession, Receipt and Distribution of Child Pornography and 18 U.S.C. § 2251,

Production of child pornography. (ECF No. 14-1, #41). In support of its application, the Government, through Special Agent Melvin Gonzales, presented an AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE. (ECF No. 14-1, #54-82)(the "affidavit"). The affidavit's contents are described below:

Agent Gonzales, a member of the Child Exploitation Task Force, conducts investigations involving child sex trafficking, child pornography, and child abductions. Aff. at ¶ 1. Gonzales stated that he had probable cause to believe that a 1995 Ford Tractor Trailer, license plate 26-392, and a Samsung Galaxy S5 telephone, model SM-G900V, contained contraband and evidence of a crime in violation of 18 U.S.C. § 2551 (production of child pornography); 18 U.S.C. § 2251A (selling or buying of children); 18 U.S.C. § 2252 (possession of, knowing access or attempted access with intent to view, child pornography); 18 U.S.C. § 2422 (enticement or coercion of a minor to engage in illegal sexual activity); and 18 U.S.C § 1591 (sex tracking of children). Id. at ¶ 2. The affidavit is based on information provided by FBI Special Agents, FBI Task Force Agents, other law enforcement agents, electronic surveillance conducted by law enforcement agents, and independent investigation conducted by FBI agents as well as computer forensic professionals. Id. at ¶ 4. Gonzales explained, "I have not included each and every fact known to me

2

concerning that investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation for the requested warrant." Id.

## A. Contents of the Affidavit Respecting Haas and Child Pornography

The affidavit avers that, "[o]n June 16, 2016, members of the FBI Richmond Child Exploitation Task Force, received information [ that] . . . Haas . . . was both interested in and actively producing child pornography." Aff. at ¶ 7. The information was provided by a confidential witness ("CW"), who was an escort to Haas for a period of four years.[1]

CW told the FBI that "Haas advised CW that he had a neighbor who was approximately 12 years old that would come over and perform oral sex on him." Aff. at ¶ 7. CW reported that she and Haas stopped seeing each other shortly after that conversation.

CW relayed that, in May 2016, she and Haas resumed their relationship and met at a residence in Chesterfield County, Virginia. Aff. at ¶ 8.

> During this visit, Haas again brought up his interest in juvenile females. Haas displayed his laptop to CW, which contained images of juvenile females. CW described

---

[1] The affidavit makes clear that, although CW knew Haas for a period of four years, she only recently resumed her association with him. See Aff. at ¶ 7 ("CW and Haas parted ways shortly after that conversation four years ago.").

3

the images as depicting juvenile females
between the ages of 5 and 12 in various
stages of undress and engaged in sexually
explicit acts. CW advised that she was
shown between 50 and 100 images of these
girls. Haas advised CW that he knew the
victims because they lived in the
neighborhood. While Haas displayed the
images to CW, he masturbated to the photos.

Id. Haas then told CW that he would like her to be "involved in
the production of images and videos of child pornography with
juvenile females and inquired as to whether CW would be able to
help provide these females for such production." Id.

CW identified Haas in a photograph provided by FBI agents
and she also provided the agents with Haas's phone number. "FBI
agents cross searched [the number provided by CW] with law-
enforcement databases and were able to determine that it has
been used as a contact number for Haas in law-enforcement
investigations." Aff. at ¶ 9.² CW told the agents that Haas
drove a light-colored Jetta and was able to identify a photo of
Haas's residence.

In a meeting on July 21, 2016, CW told FBI agents that she
had numerous telephone conversations with Haas. CW also told
the agents that Haas "constantly discussed the production of
child pornography with CW and requested CW to find an underage
female in order to produce child pornography." Aff. at ¶ 10.

_____

² The affidavit does not provide details of the other law
enforcement investigations involving Haas.

4

On August 12, 2016 and August 13, 2016, acting under the authority of the FBI agents, CW recorded two telephone conversations with Haas. Aff. at ¶ 11.[3] CW relayed that, "Haas requested CW to coordinate a meeting between him and an underage female not older than 12 years old." Id. "Haas also requested nude photos of underage females in exchange for money." Id.

## B. Contents of the Affidavit Respecting Child Molestation by Haas

"On August, 18, 2016, FBI agents received a complaint from the Richmond Police Department, indicating that Haas had sexually molested an 11-year old female ("CV1") on multiple occasions." Aff. at ¶ 14. CV1 was forensically interviewed and provided the following information: CV1 and her father would go to the Richmond Inn to beg for money. Haas approached CV1's father and gave him $5. He then returned a short time later, gave CV1's father $60, and asked if CV1 could go to his home to babysit. At first, CV1's father refused; however, when Haas asked if CV1 could provide cleaning services, CV1's father agreed. Aff. at ¶ 15.

The affidavit provides that, "[d]uring the initial visit to [Haas's] house . . . [a]t some point, [Haas] asked CV1 to come to the living room where he was sitting on the floor in front of

---

[3] The transcripts of these calls were not included in the affidavit.

the couch. [Haas] asked CV1 to lie down on the couch
. . . CV1 said that [Haas] pulled her pants down and pushed her
shirt up. CV1 sat up and pulled her pants up and attempted to
exit the room. [Haas] stopped her and told her to lie back down
on the couch." Aff. at ¶ 16.[4] According to CV1, this occurred
on at least five separation occasions.

On August 26, 2016, when CV1's guardian was interviewed by
the FBI, she told agents that CV1 reported that Haas had given
her between $200-$600 every time she had an encounter with him.[5]
The guardian reported that the last time CVI saw Haas, sometime
in late June 2016, "he picked her up at her brother's residence
and sexually abused CV1 in his vehicle." Aff. ¶ 17.

CV1 was unable to identify Haas from a photograph shown to
her by law enforcement. Aff. ¶ 19. CV1's guardian obtained
Haas's cell phone number from CV1's mother. FBI agents
confirmed that the number reported by the guardian was
registered to Haas. Aff. ¶ 20. FBI agents confirmed that this

---

[4] The affidavit provides that after Haas's first encounter with
CV1, Haas drove CV1 back to the Richmond Inn, gave her $200,
"and told her to give it to her parents. [He also] told CV1
that she could not tell anyone what he had done or he would be
arrested and sent to jail." Aff. at ¶ 16. The affidavit
provided additional graphic details regarding the alleged sexual
assault against CV1.

[5] It appears from the affidavit that the multiple visits between
Haas and CV1 were organized by CV1's mother, not CV1's current
guardian.

6

number had called the Richmond Inn on numerous occasions. Additionally, the number was used for 60 test messages and 100 telephone calls to CV1's mother from May 2016 to July 2016. Aff. ¶ 22.

After receiving the foregoing information about CV1, FBI conducted surveillance on Haas's residence, in North Chesterfield, Virginia and observed Haas depart the residence in his Jetta.[6]

## C. Execution of Search Warrant and Haas's Arrest

The FBI obtained a search warrant for Haas's residence on August, 31, 2016 (ECF No. 18-1)(Gov. Exhibit A). When the FBI tried to execute the warrant on September 1, 2016, Haas had already left for work. Aff. ¶ 25. FBI agents then proceeded to Haas's work location and arrested Haas in his work vehicle, a 1995 Ford tractor trailer truck. Haas was arrested pursuant to a Virginia arrest warrant, charging him with aggravated sexual battery of a minor. Id. During the search incident to the arrest, the FBI agents recovered a Samsung Galaxy S5 telephone. During a protective sweep of the tractor trailer vehicle, an FBI agent noticed a laptop bag. "After seeing the laptop bag, the agent ceased his protective sweep and exited the vehicle." Id

_____

[6] The affidavit reports that during the course of the events described in the affidavit, Haas relocated to a new residence.

7

A new affidavit, identical to the first,[7] was submitted to the Magistrate Judge in support of a request for a warrant to search Haas's 1995 Ford tractor trailer. Based on the affidavit, the Magistrate Judge issued a search warrant to allow the search of Haas's 1995 tractor trailer and Haas's cell phone. The laptop was seized from the tractor trailer. A forensic examination of the laptop seized from the tractor trailer revealed that Haas had saved approximately 17,000 images of children, including prepubescent children, engaged in sexually explicit conduct.

## D.  Motion to Suppress Hearing

FBI Agent Gonzales ("Gonzales"), the agent responsible for drafting the affidavit at issue, testified at an evidentiary hearing on the Motion to Suppress. He provided testimony about several topics.

### 1.  History of CW

Agent Gonzales testified that before the case, he did not personally know CW, but he knew that she had served as a confidential witness for the FBI in the Norfolk Division. (ECF No. 26, #230). After CW reported to the FBI that she had seen Haas viewing child pornography on his computer in May 2016, Gonzales corroborated Haas's identity, his address, and his date

___

[7] The new affidavit did not include information about what, if anything was found during the search of Haas's residence.

of birth. Gonzales also obtained Haas's telephone records which "indicated hundreds of calls between them [Haas and CW] and text messages." Id. at #238. When Gonzales swore out the affidavit, he was aware that CW was on felony probation supervision in the Virginia court system. During the course of the investigation, sometime in July 2016, Gonzales learned from CW that she was on probation. CW told Gonzales that she previously had been arrested for prostitution. Gonzales assumed that CW was on probation for the prostitution offense. Gonzales also testified that, on July 14, 2016, CW told him that she had an encounter with the Henrico County Police one week earlier, and that CW disclosed that she had made a false statement to a Henrico police officer about her identify during that traffic stop.

CW voluntarily provided the information to him and explained that she wanted to set the matter straight. Gonzales then contacted the Henrico Police Department, and the Henrico Commonwealth Attorney's Office agreed to set up a meeting with CW. Gonzales escorted CW to the Henrico Court on July 25, 2016, where she was charged and held in jail without bond. Gonzales again explained that none of the information regarding CW's criminal history, other than the information that she was an escort, was included in the affidavit. Gonzales also testified that before swearing to the affidavit, he did not run a criminal history check of CW.

### 2. Information about the Laptop

Gonzales testified that CW reported that Haas had viewed the child pornography on his black laptop at home. Gonzales did not include the color of the laptop in the affidavit. Id. at #265. Gonzales explained that CW did not provide any specific identifying marks respecting the laptop.

Gonzales also testified that, upon executing the first warrant at Haas's residence, the FBI located two laptop computers. When asked whether he knew, at the time he was filling out the application for the second warrant whether the two laptops had been seized, Gonzales testified "Probably, yes. Yes. I would say yes." Gonzales explained that the information about the seized laptops was not included in the affidavit for the second warrant.

### 3. New Arguments

When the Court inquired into the connection between CW's testimony about Haas viewing child pornography on his laptop in his home and Haas's laptop that was found in his work truck, the Government, for the first time, relied on paragraph 36A of the affidavit, which in relevant part states:

> *Probable cause.* I submit that if a computer or storage medium is found in the SUBJECT PROPERTY, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons: (a) Based on my knowledge, training, and experience, I know

10

> that computer files or remnants of such
> files can be recovered months or even years
> after they have been downloaded onto a
> storage medium . . . .

The Government explained that "this specific paragraph . . . discusses essentially how long electronic files can be stored, and that deleted files can be recovered by way of forensic techniques. Furthermore, paragraph 28 of the affidavit provides how "[c]omputers and digital technology have dramatically changed the way in which individuals interested in child pornography" view it. The Government argued that this goes to "the probable cause to search essentially any laptop [] found in Mr. Haas's possession." (ECF No. 26, #356).

## ANALYSIS AND APPLICATION OF LAW

Haas asserts that the affidavit in support of the search warrant does not supply probable cause because "a reasonably prudent person would not have been justified in believing that the totally-of-the-circumstances surrounding Mr. Haas's alleged crimes suggested that evidence of such crimes might be found on Mr. Haas's computer." (Def's Mot. To Suppress)(ECF No. 14, #34). The Court agrees with the Defendant and finds that the affidavit does not provide probable cause to support a finding that evidence of child pornography would be found on Haas's computer that was located in his tractor trailer. Nonetheless, under the good faith exception, the evidence will not be

suppressed. In making this determination, the Court considers each of the Defendant's relevant arguments as described below.

## A. The Affidavit Lacks Probable Cause

The Constitution of the United States provides that "no Warrants shall issue, but upon probable cause." **U.S. Const, amend. IV.** There is no rigid formula for determining probable cause. Instead, courts must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The Supreme Court has held that "great deference" should be given "to a magistrate's determination" of a finding of probable cause. Spinelli v. United States, 393 U.S. 410, 419 (1969).

### 1. Evidence of Child Molestation Alone is Insufficient for a Finding of Probable Cause for Possession of Child Pornography

Haas argues that the allegations of child molestation included in the affidavit do not support a finding of probable cause to search a laptop computer for child pornography located in his work vehicle. "The eleven year old never claimed that Mr. Haas's computer was connected to the offense being investigated," thus, says Haas, under United States v. Doyle,

allegations of sexual assault cannot create "probable cause to search the electronic devices" of the defendant.

Despite the great deference given to magistrates when making probable cause determinations, certain situations, as a matter of law, preclude a finding of probable cause. In United States v. Church, the Court was confronted with such a situation. Laying out the standard adopted by the Fourth Circuit in United States v. Doyle, 650 F.3d 460, 72 (4th Cir. 2011), the Court held that a warrant to search for child pornography was lacking in probable cause where the warrant was based solely on allegations of child molestation. 2016 WL 6123235, *3 (E.D. Va. 2016); see also United States v. Doyle, 650 F.3d 460, 472 (4th Cir. 2011)("The bulk of the information supplied in the affidavit concerned allegations of sexual assault. But evidence of child molestation alone does not support probable cause to search for child pornography.")

In Church, the Government failed to distinguish its affidavit from the affidavit in Doyle because "none of the additional information provided in the [Church] affidavit bears on the probable cause analysis. The only 'material facts supporting probable cause' offered by [the affidavit] related to child molestation." 2016 WL 6123235, *5.

The exact opposite is true in this case. Rather than rely on allegations of child molestation *alone* to obtain a warrant to

13

search for child pornography on Haas's electronic devices, the Government instead relied on the information from a witness who saw Defendant viewing child pornography on his personal laptop.

Notwithstanding the fact that other information about child pornography was included in the affidavit, the evidence of child molestation contained in the affidavit need not be ignored in making a probable cause determination. Haas incorrectly argues that, under Doyle, the "information regarding the eleven year old [] bore no relationship to Mr. Haas's computer or the GPS device." (ECF No. 14, # 35). In making this statement, Haas overstates the Fourth Circuit's holding in Doyle.

Although the Fourth Circuit drew a line in Doyle,[8] that line relates to a finding of probable cause to search for child pornography based on affidavits alleging child molestation *alone*. However, Doyle does not stand for the proposition that evidence of child molestation should be ignored when seeking a warrant to search for child pornography. In fact, it would be impermissible to ignore averments in an affidavit that a defendant molested a child when the affidavit also avers that the same defendant viewed child pornography because the Fourth

---

[8] Doyle has subsequently been applied in other circuits. See Virgin Islands v. John, 654 F.3d 412, 420 (3d Cir. 2011); Dougherty v. City of Covina, 654 F.3d 892, 898 (9th Cir. 2011).

14

Amendment analysis should be based on the totality of circumstances.

The Court need not determine whether probable cause to search the tractor trailer for child pornography was proper based solely on the allegations of child molestation contained in the affidavit because that is simply not the factual record presented here. Instead, the Court will consider the information in the affidavit about child molestation as a part of the overall probable cause analysis in light of the information contained in the affidavit about Haas's use and continued interest in child pornography.

## 2. The Affidavit Provides Sufficient Information to Assess the Credibility of the Government Witness

Next, Haas asserts that the affidavit "failed to provide any information regarding the reliability or veracity of the cooperating witness." In particular, Haas attacks the background of the government witness CW, noting that CW's criminal history was not included in the affidavit. Additionally, Haas argues that there was no corroborating evidence "regarding pornography on the computer through independent investigation."

### a. Credibility and Probable Cause

The "probable cause standard does not 'require officials to possess an airtight case before taking action. The pieces of an

15

investigative puzzle will often fail to neatly fit, and officers must be given leeway to draw reasonable conclusions from confusing and contradictory information, free of the apprehension that every mistaken search or seizure will present a triable issue of probable cause.'" United States v. Robinson, 275 F.3d 371, 380 (4th Cir. 2001) (quoting Taylor v. Farmer, 13 F.3d 117, 121-22 (4th Cir. 1993)).

In United States v. Moore, the Court explained that there is no one rule that governs the use of informants in the Fourth Circuit. However, the Court of Appeals has "distinguished between an informant who meets face-to-face with an officer, thereby providing the officer with an opportunity to assess his credibility and demeanor and exposing himself to accountability for making a false statement, and cases involving anonymous tipsters." 775 F. Supp. 2d 882, 895-96 (E.D. Va. 2011) (internal citations omitted) (quoting United States v. DeQuasie, 373 F.3d 509, 523 (4th Cir. 2004)); see also United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000).

Haas asserts that the only link in the affidavit between him and illegal activity on the computer was provided by CW, and that CW's statements are not reliable because the affidavit failed to establish her reliability or credibility. In making this argument, Haas ignores the holding in Moore. Here, the FBI had several opportunities, as evidenced in the affidavit, to

16

meet with CW in person.  At these meetings, CW identified Haas

in photos, provided Haas's cell phone number, and identified

Haas's personal vehicle and residence.  The FBI could, and did,

assess the reliability of the information CW provided from these

encounters.  Moreover, CW provided recordings of her calls with

Haas which the agents were then able to review independently.

As the Government explains in its papers, "it is difficult to

imagine additional steps the agents could have taken to

corroborate CW's credibility."  (ECF No. 18, #104).

### b.  *Franks* Hearing

In challenging the credibility and reliability of CW, Haas

also argued that a *Franks* hearing was necessary because the

affidavit omitted information about the credibility of CW.[9]  At

the hearing, the Court denied the request.  The Court has

_____

[9] Haas also argued that a *Franks* hearing was necessary because it
was improper for the affidavit to: (1) omit information
regarding the discovery of the two laptops at Haas's residence;
and (2) omit the transcripts from the recorded calls between CW
and Haas.  The Court finds that neither omission was
intentional.  If anything, the information omitted would have
served to support the Government's position as to probable
cause.  Specifically, the presence of two laptops at Haas's home
indicates that he possessed multiple electronic devises,
including quite possibly, the third laptop later uncovered in
his work vehicle.  Additionally, the transcripts of the phone
calls strongly suggest that Haas was interested in obtaining
nude pictures of young children.  While the transcript does not
include the term "nude" and instead refers to Haas's request for
pictures, the affidavit sufficiently describes that CW
understood Haas to be requesting pictures of nude children.

17

reconsidered the issue at Haas's urging and continues to find no basis to warrant a *Franks* hearing.

Pursuant to Franks v. Delaware, 438 U.S. 153 (1988), a defendant may challenge a search warrant by challenging the veracity of the affidavit made to obtain the warrant. "In *Franks*, the Supreme Court developed a two-prong test clarifying what a criminal defendant must show when challenging the veracity of statements made in an affidavit supporting a search warrant. If both prongs are met, the search warrant must be voided and the fruits of the search excluded." United States v. Lull, 824 F.3d 109, 114-15 (4th Cir. 2016) (citing Franks, 438 U.S. at 155–56).

As to the first prong, known as the "intentionality" prong, a defendant must show, by a preponderance of the evidence, that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks, 438 U.S. at 155-56. As to the second prong, the "materiality" prong, a defendant must show, also by a preponderance of the evidence, that, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." Id. at 156.

**Defendant has Failed to Show That the Affidavit Included or Failed to Include any Statement with Reckless Disregard for the Truth**

The intentionality prong can be applied in cases where affidavits include a false statement, or alternately, where affidavits omit relevant facts. See Lull, 824 F.3d at 114 (discussing United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990)). In Lull, the Fourth Circuit considered whether an investigator's omissions in an affidavit were misleading, sufficient to satisfy the intentionality prong under Franks. The Court noted, "[u]nderstandably, the defendant's burden in showing intent is greater in the case of an omission because '[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation.'" 824 F.3d at 115(internal citations omitted).

In Lull, an informant was used during a control buy and after the buy, the informant lied to the officers and tried to hide $20 from the proceeds of the buy in his underpants. Having lied and stolen from the officers, the sheriff's office immediately terminated the informant's services and subsequently arrested him. Id. at 112. Immediately thereafter, the investigator drafted an affidavit to search Lull's residence, the residence where the control buy occurred. Id. The investigator neither "disclose[d] the informant's theft and subsequent arrest to the state court magistrate," nor did the

19

affidavit contain information "concerning the informant's reliability or previous experience working as a confidential informant." Id. at 113. The Court of Appeals determined that, by leaving out the information regarding the informant's theft and subsequent arrest, the affidavit did not give the magistrate the opportunity to consider the informant's reliability under the totality of circumstances test.

In this case, Haas believes that the information known to the agents about CW's criminal history, specifically that CW was a convicted felon who was on probation and who had recently been arrested for providing a false statement to the police during a traffic stop, should have been provided in the affidavit. The comparison of CW to the informant in Lull is unjustified. In Lull, the informant lied to the investigators about a drug buy, which served as the basis for the affidavit, thus when the investigator made the decision to omit this theft in the affidavit, it was the investigator's belief that the drug buy was still reliable. In this case, the affidavit fully discloses all relevant conduct between Haas and CW which serves as the basis for the affidavit. The Government explains, "[t]he affiant states up front in the affidavit that CW was an 'escort,' which demonstrates the affiant was not trying to hide the nature of the relationship between CW and the defendant." (ECF No. 20, #167). As to CW's criminal history, there is no

indication that her past offenses had any bearing on her interactions with Haas. At the hearing on the Motion to Suppress, Agent Gonzales testified that, at the time he swore to the affidavit, he did not think it was necessary to run CW's criminal history. He further explained that, although he arranged a meeting between the Henrico Attorney's Office and CW to address the false statement that CW had made to police during a traffic stop, it was CW who willingly disclosed the information to Gonzales and indicated her desire to resolve the issue. CW had informed Gonzales that she was on probation and Gonzales knew that CW was a prostitute. Given the nature of CW's conduct and her forthcoming nature with Agent Gonzales, the agent was not reckless in omitting these facts.

If CW had done something to make the agents question her truthfulness, as did the informant in Lull, providing more information as to her reliability would have been necessary. Here however, CW was forthcoming with the police, correctly identified Haas in photos, and provided his cellphone number to agents, which the agents were able to independently corroborate. CW never once provided information to the agents that they subsequently determined was false. Based on the totality of the circumstances, it was possible for the magistrate to make a determination of the reliability of CW. Thus, unlike Lull, the

witness's statements need not be removed from the affidavit before making a determination of materiality.[10]

**3. The Information in the Affidavit Fails to Provide a Nexus between Haas's Laptop in his home, which Allegedly Contained Child Pornography, and a Laptop Found in Haas's Work Tractor Trailer**

Haas made several arguments about the connection between the laptop observed by CW in Haas's home and the laptop recovered from his work vehicle at the work site. In particular, he argues that "there was no information in the affidavit to suggest that the computer in the tractor trailer was the same laptop that the CW saw in May 2016. In fact, the laptop in the truck was more likely to be a work computer and less likely to contain child pornography." And, at the hearing on the Motion to Suppress, Haas argued that "[t]here's no evidence that there were [child pornography] images stored or possessed in Mr. Haas's work truck. There's no allegation of that. The CW certainly didn't mention his work truck, nor did the 11-year-old complainant . . . ." (ECF No. 26, # 302-303).

"In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the

---

[10] Clearly, the affidavit contained no false statement.

place to be searched. *Zurcher v. Stanford Daily,* 436 U.S. 547, 556 & n. 6, 98 S.Ct. 1970, 1976-77 & n. 6, 56 L.Ed.2d 525 (1978)." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993). "[T]he nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993) (citing United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988)). "[P]robable cause can be inferred from the circumstances, and a warrant is not invalid for failure to produce direct evidence that the items to be seized will be found at a particular location." Id. at 1582.

In Lalor, the Court determined that an affidavit was devoid of a basis by which a magistrate could make a probable cause determination. The Court explained: "The affidavit does not describe circumstances that indicate such evidence was likely to be stored at Lalor's residence. Nor does the affidavit explain the geographic relationship between the area where the drug sales occurred and [Defendant's residence]." Id. at 1583. "In short, the magistrate was given no basis for making a judgment concerning this aspect of probable cause." Id.

An identical nexus problem exists from the record here. There was no basis on which to conclude that evidence of child pornography would be found on a laptop in Haas's tractor

trailer, a work vehicle located at his place of work. Paragraph 8 of the affidavit provides, in relevant part, "Haas displayed his laptop to CW, which contained images of juvenile females. CW described the images as depicting juvenile females between the ages of 5 and 12 in various stages of undress and engaged in sexually explicit acts. CW advised that she was shown between 50 and 100 images of these girls." All of this conduct occurred in Haas's residence. There is no mention of illegal child pornography on a laptop in Haas's work vehicle. In fact, the affidavit hardly discusses the work vehicle. The affidavit describes that Haas "has been observed driving to his work location," Haas was arrested while at work, in the "driver's seat of his work vehicle, 1995 Ford tractor-trailer truck" and "during a protective sweep of the tractor-trailer truck, an FBI agent observed a [] laptop bag . . ." See Aff. ¶ 25 (ECF No. 14-1, #69).

Additionally, the Court agrees that nothing in the record shows whether the laptop in the tractor trailer was in fact the same laptop CW had seen Haas using in his residence some months earlier. The affidavit contained no description of the laptop witnessed by CW, therefore, there was no way to find probable cause that evidence of child pornography would be found on the laptop seen in the tractor trailer.

At the hearing on the Motion to Suppress, the Government, for the first time, presented an argument that paragraph 36A of the affidavit, which discusses "Probable Cause", and paragraph 28 of the affidavit, which discusses how computer sophistication has changed how these types of crimes are permitted, support a finding of probable cause that evidence of child pornography would be found in a laptop in Haas's tractor trailer. In the SUPPLEMENTAL RESPONSE BRIEF OF THE UNITED STATES (ECF No. 28), in further support of this argument, the Government points to the following language in the affidavit:

> Individuals who possess child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, or inside the collector's vehicle, to enable the individual to view the collection, which is valid highly.

Aff. at ¶ 27. The Government then explains that, when agents saw the laptop in Haas's work vehicle, "they immediately went back to the magistrate . . . because they knew that it likely contained child pornography."

The Court fails to see how it is permissible to draw an inference between the language in the affidavit describing how individuals possess child pornography generally and the notion that a laptop viewed in Haas's work vehicle would likely contain

child pornography. The Government relies on <u>United States v. Lamb</u>, 943 F.Supp 441 (N.D.N.Y. 1996), for the proposition that "images of child pornography are likely to be hoarded by persons interested in those materials in the *privacy of their homes . . . .*" (emphasis added). However, in this case, the laptop was not found in Haas's home, it was found in his work vehicle, and not even in his personal vehicle. Further, the laptop viewed by CW in Haas's home was seen there long before the agents viewed the laptop in the work vehicle. On this record, <u>Lamb</u> lends no aid to the Government's position.

Additionally, the Government cites several decisions which show that evidence of child pornography on a computer can be retrieved by scientific examination if the files were deleted from the computer. <u>See</u> <u>United States v. Richardson</u>, 607 F.3d 357 (4th Cir. 2010). This, no doubt, is true, but it is unclear how, if at all, that point is relevant. There are no allegations in the affidavit that support a finding that Haas deleted images of child pornography. The issue is whether the affidavit provided a sufficient basis to believe that evidence of child pornography would in fact be found on a laptop in Haas's tractor trailer based on his conduct in viewing child pornography on a laptop in his home months earlier. The Court is not persuaded by the Government's argument and finds no nexus between the information presented in the affidavit and the

location and items to be searched and seized. A finding of probable cause is lacking.

## B. Good Faith Exception

Because the Court finds that the affidavit was not sufficient to supply probable cause to issue a warrant to seize the laptop in Haas's work vehicle, it is necessary to consider whether a good faith basis exists to justify the search and seizure of the laptop. Under the good faith exception doctrine, evidence obtained from an invalidated search warrant will only be suppressed: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) if the "issuing magistrate wholly abandoned his judicial role"; (3) if the "affidavit [was] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the officer had "no reasonable grounds for believing that the warrant was properly issued." United States v. Leon, 468 U.S. 897 (1984). None of those circumstances exist here.

In Lalor,[11] the Fourth Circuit found that, although a warrant was deficient for failure to establish a nexus between the alleged illegal conduct and the location that was to be

[11] United States v. Lalor, 996 F.2d at 1583.

27

searched, "the warrant is not so lacking in probable cause that the officers' reliance upon it was objectively unreasonable." Id. at 1583. The same is true here. The affidavit was not a bare bones affidavit, far from it. Furthermore, the magistrate was not misled by information that the affiant knew was false, or would have known was false if not for a reckless disregard for the truth. As described earlier under the Franks Hearing section, the record does not show that Agent Gonzales purposefully omitted material information from the affidavit. Therefore, the evidence of the laptop computer seized from the tractor trailer and its contents fall within the protection of the good faith exception. Suppression, therefore, is not appropriate.

## CONCLUSION

The affidavit provided in this case was not sufficient to support a finding of probable cause to issue a search warrant for Haas's work vehicle. Evidence of child molestation, coupled with Defendant viewing child pornography in his home on a laptop computer, could not lead a reasonable person to conclude that evidence of child pornography would be found in a laptop computer located months later in Haas's work vehicle. Nonetheless, under the good faith exception, evidence obtained from an invalidated search warrant is not to be suppressed where

officer conduct was reasonable and where the magistrate relied on an affidavit that contained more than bare bones allegations. All the requirements necessary to support the application of the good faith exception under Lalor and United States v. Leon, 468 U.S. 897 (1984) are present here. Therefore, DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (ECF No. 14) will be denied.

It is so ORDERED.

/s/ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 2, 2017