IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA

v.  Criminal Action No. 3:16CR139

RICHARD TODD HAAS,

    Defendant.

### MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION TO SUPPRESS AND MOTION FOR A FRANKS HEARING (ECF No. 128). Defendant Richard Todd Haas ("Haas") first seeks an evidentiary hearing, pursuant to Franks v. Delaware, 438 U.S. 153 (1988), to challenge the completeness of statements made in an affidavit supporting a search warrant for Haas' 2015 Volkswagen Jetta. Haas also moves to suppress all evidence seized during the ensuing search of the Jetta. For the reasons discussed below, the motion will be denied in both respects.

### BACKGROUND

On August 31, 2016, FBI Special Agent Melvin Gonzalez ("Gonzalez") presented Magistrate Judge Young with an application for a search warrant for: (1) Haas' residence at 236 Monath Road, North Chesterfield, Virginia; and (2) Haas' 2015 Jetta. See Search Warrant (ECF No. 27-1) at Attachments A-B. The

application was supported by a lengthy affidavit from Gonzalez ("the First Affidavit"), which asserted probable cause based, in part, on Haas' communications with a confidential witness ("CW"). See First Aff. ¶¶ 7-13. Magistrate Judge Young granted the application, and FBI agents executed the warrant on September 1, 2016. Second Aff. (ECF No. 14-1) ¶ 25. As Haas' counsel explained at oral argument, among the items recovered from the car was sex paraphernalia (a purple vibrator) that Haas allegedly used to commit other child molestation offenses, evidence of which is the subject of the UNITED STATES' NOTICE OF INTENT AND MOTION TO INTRODUCE OTHER ACTS EVIDENCE PURSUANT TO FED. R. EVID. 414 AND 404(b) (ECF No. 81).

The agents searched Haas' residence and Jetta when he was not present. They were aware, from surveillance, that Haas was at work, so they then went to his work address and found him in his work vehicle, a 1995 Ford tractor-trailer truck, after which they arrested him for aggravated sexual battery of a minor. While searching Haas' person and the truck, the agents recovered a Samsung Galaxy S5 cellphone and laptop, respectively. Second Aff. ¶ 25. Gonzalez then submitted an application for another search warrant for the Ford truck and Samsung cellphone, which was supported by the Second Affidavit. That affidavit was

identical to the First Affidavit except for Paragraph 25, which summarized the events following the execution of the search warrant on September 1. See id.; see also United States v. Haas, No. 3:16CR139, 2017 WL 1712521, at *3 (E.D. Va. May 2, 2017). Later that day, Magistrate Judge Young granted the second warrant application, and a search of the laptop in the truck revealed numerous images of children engaged in sexually explicit conduct. Haas, 2017 WL 1712521, at *3.

On January 3, 2017, Haas moved to suppress evidence seized during the Ford truck search. See ECF No. 14. Haas argued then, much like he does now, that he was entitled to a Franks evidentiary hearing because the Second Affidavit omitted information relevant to CW's reliability. He also claimed that the Second Affidavit did not allege enough facts to support the finding of probable cause to search the truck. The Court rejected the first argument, concluding that the Second Affidavit had fully disclosed the information necessary to assess CW's reliability. Haas, 2017 WL 1712521, at *7-8.

At the same time, the Court held that the Second Affidavit failed to establish probable cause as to the truck because there was no nexus between that location and the evidence to be seized from it, including the laptop with pornographic images. Id. at

3

*8-9. That finding did not require suppression, however, because the good-faith exception applied, and the Second Affidavit was not so lacking in indicia of probable cause to make the FBI agents' reliance on it objectively unreasonable. Id. at *10.

The contents of the Second Affidavit—and, by implication, those of the First Affidavit—are detailed in the Court's opinion denying Haas' initial motion to suppress. See id. at *1-3. That opinion also describes Gonzalez's testimony about his knowledge of CW's history when preparing the First Affidavit. See id. at *3-4. As a result, the Court will not restate those details here.

Against this background, the Court will turn to the attack now made on the First Affidavit and the search of the Jetta.

**DISCUSSION**

**I. Omission of Facts from the First Affidavit**

Franks set forth a two-part test "clarifying what a criminal defendant must show when challenging the veracity of statements made in an affidavit supporting a search warrant." United States v. Lull, 824 F.3d 109, 113 (4th Cir. 2016). Under the first facet of the test, the defendant must establish that an affiant included a false statement or omitted relevant facts "'knowingly and intentionally, or with reckless disregard for

the truth.'" Id. at 114 (quoting Franks, 438 U.S. at 155). Under the second facet of the test, the defendant must show that the facts stated in the affidavit are insufficient to establish probable cause without the false or omitted information. "Both prongs must be proven by a preponderance of the evidence." Id.

Haas now asserts that Gonzalez knowingly or recklessly omitted several relevant pieces of information from the First Affidavit, including: (1) CW's criminal history; (2) the existence of text messages between Haas and CW showing her contact with the police and her continued work as a prostitute; (3) the fact that police had not corroborated CW's statements that Haas had shown her child pornography on his laptop and had told her that the victims were neighborhood children; and (4) the contents of the full transcripts of the calls between CW and Haas. None of these arguments is persuasive.

The Court has already addressed the omission of CW's criminal history and the phone call transcripts in the context of the Second Affidavit, which is no different than the First Affidavit. The current motion presents no basis for the Court to reconsider its earlier decision that those omissions did not merit a Franks hearing. "A motion for reconsideration is appropriate where the Court has patently misunderstood a party,

5

has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Paasch v. Nat'l Rural Elec. Coop. Ass'n, No. 115CV01638GBLMSN, 2016 WL 10519130, at *2 (E.D. Va. May 27, 2016) (citing Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)). But motions that simply "ask[] a court to 'rethink what the Court had already thought through—rightly or wrongly' should not be granted." TomTom, Inc. v. AOT Sys. GmbH, 17 F. Supp. 3d 545, 546 (E.D. Va. 2014) (quoting Above the Belt, 99 F.R.D. at 101). The Court previously noted that CW's criminal history did not need to be included in the Second Affidavit because she had an otherwise "forthcoming nature" with FBI agents, and "there [wa]s no indication that her past offenses had any bearing on her interactions with Haas." Haas, 2017 WL 1712521, at *7-8. Similarly, the Court did not consider the claim about the call transcripts in detail because "the transcripts . . . strongly suggest that Haas was interested in obtaining nude pictures of young children," such that their inclusion would have only bolstered the probable cause finding. Id. at *6 n.9. Haas points to no new evidence making that analysis improper. Instead, his argument amounts to nothing more than disagreement with the

6

Court's decision, which, of course, does not make reconsideration appropriate. See TomTom, 17 F. Supp. 3d at 546.

Haas' other arguments fare no better. He first asserts that the First Affidavit should have included some of the text messages between CW and Haas because they would have revealed that CW was "continuing to violate the law while working for/with the [FBI] agents," Def. Mot. (ECF No. 128) at 3, because the communications showed CW's prostitution and interaction with Henrico County police. But her work as a prostitute is readily inferable from Gonzalez's statement in the First Affidavit that CW had "provided escort services to Haas" for the four years that she knew him. First Aff. ¶ 7. "Escort services" can, of course, mean legal or illegal activity, but either meaning carries a negative connotation, which is all that is relevant for purposes of CW's reliability. See Haas, 2017 WL 1712521, at *7 (accepting Government's assertion that use of "escort" showed that Gonzalez "was not trying to hide the nature of the relationship between CW" and Haas (quotation marks omitted)). Moreover, even if that meaning was not clear, this argument is indistinguishable from Haas' contention about CW's criminal history, which has now been rejected twice. It remains true that "CW was forthcoming with the police, correctly

identified Haas in photos, . . . provided [Haas'] cellphone number to agents," and "never once provided information to the agents that they subsequently determined was false." Id. at *8.[1] As a result, there was simply no need for Gonzalez to include every single piece of information that would have only minimally affected CW's reliability, including the text messages. See United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990) ("An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation."). Gonzalez's omission of those messages was thus not intentional or reckless in the manner required for a Franks hearing.

The First Affidavit's failure to mention the lack of corroboration of CW's statements that Haas had shown her child pornography on his laptop and had identified the victims as neighborhood children is of no moment for similar reasons. As discussed, providing this sort of information to support CW's credibility might have been appropriate "[i]f CW had done something to make the agents question her truthfulness," but she

---

[1] As the Court noted before, the absence of any lies by CW in the course of her relationship with FBI agents makes Lull inapposite. Haas, 2017 WL 1712521, at *7. Because the text messages do not show that CW lied to or even deceived the agents, they do not change that distinction.

8

had not. Haas, 2017 WL 1712521, at *8. It is also unclear why corroborating the victimization of neighborhood children in particular should have affected the probable cause analysis; Gonzalez likely omitted the information because he deemed it irrelevant. See Colkley, 899 F.2d at 301. In any event, Gonzalez explicitly stated that FBI agents corroborated other details provided by the CW, such as Haas' telephone number, which in turn helped the FBI uncover more facts suggesting child molestation. First Aff. ¶¶ 9, 20-22. Given these circumstances, the Court cannot find that the omission of the lack of corroboration constitutes a Franks violation.

Because Haas cannot identify any intentional or reckless omissions of relevant facts in the First Affidavit, his request for a Franks hearing must be denied.

## II. Existence of Probable Cause

The Fourth Amendment requires probable cause for the issuance of warrants. **U.S. Const.** amend. IV. Probable cause exists where, looking at the totality of the circumstances, Maryland v. Pringle, 540 U.S. 366, 371 (2003), "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found," Ornelas v. United States, 517 U.S. 690, 696

(1996); see also Illinois v. Gates, 462 U.S. 213, 232 (1983) (probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place"). This concept is a "fluid" one depending on the facts of a case, and is thus "not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. Moreover, "a finding of probable cause does not require absolute certainty." United States v. Gary, 528 F.3d 324, 327 (4th Cir. 2008); see also Taylor v. Farmer, 13 F.3d 117, 121 (4th Cir. 1993) (officials need not "possess an airtight case before taking action").

A court reviewing a magistrate's probable cause determination also does not assess the existence of probable cause de novo. Instead, the court must only ascertain whether "the magistrate had a substantial basis for concluding that probable cause existed." Gates, 462 U.S. at 238-39 (internal quotations omitted); see also Lull, 824 F.3d at 115. In doing so, courts should accord the magistrate's determination "great deference," and should not invalidate warrants by "interpreting [them] in a hypertechnical, rather than commonsensical, manner." Gates, 462 U.S. at 236 (internal quotations omitted). Moreover, courts must "give due weight to inferences drawn from th[e]

facts by . . . law enforcement officers." Lull, 824 F.3d at 114-15 (internal quotations omitted).

Haas claims that there was not a substantial basis for finding probable cause to search the Jetta for three reasons. First, he argues, the First Affidavit did not provide enough information to allow Magistrate Judge Young to assess CW's reliability. Second, Haas asserts that the affidavit does not establish that he actually possessed child pornography. Finally, he contends that there was an inadequate nexus between the Jetta and the evidence of child pornography that the FBI sought to recover.

The common foundation of these arguments is Haas' assertion that the First Affidavit was a "bare bones affidavit" filled with "'boilerplate recitations'" of Gonzalez's experience that were not appropriately tethered to the facts of this case. Def. Mot. at 4-5 (quoting United States v. Weber, 923 F.2d 1338, 1345 (9th Cir. 1990)). Yet that claim ignores the Court's recognition that the Second Affidavit—which, again, was practically identical to the First Affidavit—was "far from" a bare bones affidavit. Haas, 2017 WL 1712521, at *10. Weber does not change this conclusion. There, the affiant relied on his knowledge of the general habits of "child molesters," "pedophiles," and

11

"child pornography collectors" to support his contention that certain evidence would be in the defendant's house, even though "there was not a whit of evidence in the affidavit indicating that [defendant] was a 'child molester.'" Weber, 923 F.2d at 1345. Here, in contrast, the First Affidavit clearly "lay[s] a foundation which shows that the person subject to the search"—Haas—"is a member of" at least two of those classes—"child molesters" and "child pornography collectors." Id.; see also First Aff. ¶¶ 7-22. Accordingly, characterizing that document as bare bones is a mistake.

This conclusion is reinforced by examining Haas' individual arguments. The Court previously rejected Haas' assertion that the First Affidavit did not establish CW's reliability when considering the first motion to suppress. Indeed, after detailing the pertinent facts in the Second Affidavit, the Court noted that "it is difficult to imagine additional steps the agents could have taken to corroborate CW's credibility." Haas, 2017 WL 1712521, at *6 (quotation marks omitted). Haas identifies no bases for reconsidering that decision here.

Likewise, the First Affidavit contains ample "indicia [that] [Haas] actually possessed child pornography." Def. Mot. at 5. Haas correctly notes that his alleged possession of child

12

pornography is supported almost entirely by CW's statement that she observed pornography on Haas' laptop. But he misstates the applicable standard here; "probable cause requires <u>only a probability or substantial chance</u> of criminal activity, not an actual showing of such activity." Gates, 462 U.S. at 243 n.13 (emphasis added); see also Gary, 528 F.3d at 327; Taylor, 13 F.3d at 121. CW's statements support that likelihood because the FBI's corroboration of several details from CW implies that her description of the images on Haas' computer is also accurate. See United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993) ("Corroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct." (citing Gates, 462 U.S. at 244)). Furthermore, CW did not need any experience with child pornography to observe that the girls in the pictures on Haas' laptop were "in various stages of undress and engaged in sexually explicit acts," especially given the significant number of images that she saw. First Aff. ¶ 8. Accepting Haas' view would in effect prevent the Court from finding probable cause unless a forensic child pornography expert stated that he personally observed a defendant with pornography. That approach is both ill-advised and inconsistent with precedent.

Finally, Magistrate Judge Young had sufficient information to find a nexus between Haas' Jetta and evidence of child pornography that the FBI sought there. "[T]he crucial element [of the probable cause inquiry] is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." Lalor, 996 F.2d at 1582. This nexus "'may be established by the nature of the item and the normal inferences of where one would likely keep such evidence,'" and does not demand "direct evidence that the items to be seized will be found at a particular location." Id. (quoting United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988)).

Seen through this lens, the First Affidavit contains enough facts to connect Haas' Jetta with evidence of his misconduct. The Jetta is only referenced in the affidavit twice: CW saw Haas in the Jetta once when they met in person, and the FBI observed Haas leaving his residence in that car on several occasions. First Aff. ¶¶ 10, 23.[2] However, as noted, there is ample evidence

---

[2] The Government also claims that the Court can infer Haas' use of the Jetta from allegations that he picked up and brought to his residence a young girl whom he is alleged to have molested. See First Aff. ¶¶ 15-16. Although the First Affidavit indeed states that Haas drove the girl, id. ¶ 16, it is impossible to

14

to show that Haas possessed child pornography. In addition, Gonzalez stated that, in his experience with child exploitation investigations, "individuals who access with intent to view, possess, collect and receive child pornography often maintain their collections . . . in a safe, secure and private environment, such as a computer . . . . These collections are often maintained for several years and are kept close by, usually at the collector's residence, or <u>inside the collector's vehicle</u>, to enable the individual to view the collection." Id. ¶ 25(d) (emphasis added). This allegation was not enough to create a nexus between Haas' Ford truck and evidence of child pornography, but the link is much closer here because Haas had previously been observed driving the Jetta—his personal vehicle—from his residence, where he was very likely to maintain illicit material. See Haas, 2017 WL 1712521, at *9. Taken together, these factors indicate that evidence of child pornography "was likely to be stored" in the Jetta. Lalor, 996 F.2d at 1582; see also United States v. Suarez, 906 F.2d 977, 984-85 (4th Cir. 1990).

---

determine whether he was using his personal or work vehicle at the time, so that fact does not help show a nexus.

Based on these circumstances, there was a sufficient factual nexus between the evidence of Haas' child pornography possession and his Jetta to allow Magistrate Judge Young to infer that more evidence related to child pornography would likely be found there. Accordingly, the information in the First Affidavit gave Magistrate Judge Young a "substantial basis" to conclude that probable cause existed, Gates, 462 U.S. at 238, and Haas' motion to suppress can be denied on that basis.

### III. Application of Good Faith Exception

Even if the First Affidavit did not support a probable cause finding, the good faith exception precludes exclusion of the evidence from the Jetta. The exclusionary rule "bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." Davis v. United States, 564 U.S. 229, 232 (2011). However, under the good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if reliance on the warrant was 'objectively reasonable.'" United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004) (quoting United States v. Leon, 468 U.S. 897, 922 (1984)). The relevant question is thus whether "a reasonably well trained officer would have known that the search was illegal despite the magistrate's

16

authorization." Leon, 468 U.S. at 923. There are four situations in which an officer's reliance cannot be considered "objectively reasonable":

(1)  where the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;

(2)  where the magistrate wholly abandoned his detached and neutral judicial role;

(3)  where the supporting affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

(4)  where the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Williams, 548 F.3d 311, 317-18 (4th Cir. 2008) (citing Leon, 468 U.S. at 923). Haas argues that the third exception applies here.

That contention is misguided. As detailed above, evidence that Haas possessed child pornography in his residence and used his Jetta to get to and from that location gave Magistrate Judge Young a solid basis on which to find probable cause. Even if the First Affidavit was technically inadequate in that regard, the indicia of probable cause to search the Jetta were stronger than the indicia as to the Ford truck, the search of which was

17

permissible under the good faith exception. See Haas, 2017 WL 1712521, at *10. Similarly, this case is far less egregious than Lalor, in which the third Leon exception did not apply even though the underlying affidavit contained no statements about the likelihood of discovering evidence at the target address. See 996 F.2d at 1583. As a result, even if probable cause is lacking, the good faith exception prevents the application of the exclusionary rule.

**CONCLUSION**

For the foregoing reasons, DEFENDANT'S MOTION TO SUPPRESS AND MOTION FOR A FRANKS HEARING (ECF No. 128) will be denied.

It is so ORDERED.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August __, 2018

18